IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |  |
|---|---|---|
| Tamar D. Harvey,<br>Plaintiff, | )<br>)<br>) | |
| v. | ) | 1:14cv657 (GBL/TCB) |
| Dr. Emran, et al.,<br>Defendants. | )<br>)<br>)<br>) | |

MEMORANDUM OPINION

This matter comes before the Court upon defendants' Motions for Summary Judgment. Tamar D. Harvey, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants, Dr. Emran, Nurse Smith, and Captain Hunt, showed deliberate indifference to his serious medical needs in violation of his Eighth Amendment constitutional rights. The defendants have filed Motions for Summary Judgment, as well as memoranda of law and numerous supporting exhibits on the grounds that: (1) plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act; (2) plaintiff committed fraud on the court by submitting fraudulent grievances to the Court; (3) plaintiff cannot establish a claim of deliberate indifference against any defendant with respect to his incarceration at Richmond City Jail; and (4) plaintiff cannot establish any claim that the conditions of his voluntary confinement jail cell caused him serious injury that constituted cruel and unusual punishment. Dkt. Nos. 34, 35, 37, 38. Plaintiff was given the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff has filed multiple responsive letters and pleadings. For the reasons that follow, defendants' Motions for Summary Judgment must be granted.

I. Factual Background

### A. Dr. Emran and Nurse Smith

Plaintiff was incarcerated at Richmond City Jail from December 2013 until January 2015. At that time plaintiff was diagnosed with HIV and hypertension. Khairul Emran is a Medical Doctor board certified in Internal Medicine, and he was responsible for plaintiff's care during plaintiff's incarceration at Richmond City Jail. Dkt. No. 38. Dr. Emran has been providing medical services to inmates in correctional facilities since 2002, and he has been the Medical Director at the Richmond City Jail since May 2003. Dkt. No. 38 (Ex. G, Affidavit of Khairul Emran). Demetrice Smith is a Licensed Practical Nurse who has worked for three years as a nurse at the Richmond City Jail directly with the jail physician providing primary care to inmates. Dkt. No. 38 (Ex. K, Affidavit of Demetrice Smith).

Plaintiff was received at Richmond City Jail on December 27, 2013, and at that time his prescribed medications were Atripla (for the management of HIV) and Lisinopril (for the management of hypertension). Dkt. No. 38 (Ex. G, Affidavit of Khairul Emran), Dkt. No. 38 (Ex. K, Affidavit of Demetrice Smith), Dkt. No. 38 (Ex. H, Medical Records). On the day of his arrival, plaintiff's blood pressure was checked and recorded on the Receiving Screening as 135/85, which was well within normal limits. Id. Plaintiff's blood pressure was monitored regularly throughout his time at the Richmond City Jail, and while he was housed at Richmond City Jail, his blood pressure remained stable and controlled without medication. Dkt. No. 38 (Ex. G, Affidavit of Khairul Emran), Dkt. No. 38 (Ex. I, Patient Profile Summary). Thus, according to his doctor, his clinical condition during his months of confinement at Richmond City Jail did not call for antihypertensive medication treatment. Id. Plaintiff's last recorded blood pressure level prior to his transfer out of Richmond City Jail in January 2015 was 116/79 without any antihypertensive medication, which was within his normal range. Dkt. No. 38 (Ex. G, Affidavit of Khairul

2

Emran), Dkt. No. 38 (Ex. K, Affidavit of Demetrice Smith), Dkt. No. 38 (Ex. H, Medical Records).

Upon plaintiff's arrival to Richmond City Jail, Dr. Emran's orders included Viread, Lamivudine, and Sustive, which together equate a triple drug combination and the pharmalogical equivalent of the drug Atripla that plaintiff had previously taken to manage his HIV. Id. For the entire time plaintiff was incarcerated at the Richmond City Jail, his CD4 and HIV viral lot levels were within the desirable parameters. Id. While taking the triple drug combination, plaintiff complained that dark circles on his hands and a rash on his sides developed and were caused by the pill combination Dr. Emran had prescribed and administered to him. Dkt. No. 1. In March 2014, even though the triple pill combination appeared to Dr. Emran to be effective, Dr. Emran placed plaintiff back on the singular pill Atripla that he previously took in order to allay plaintiff's concerns about his treatment. Id. Because plaintiff remained within the desirable levels for his entire period of incarceration at the Richmond City Jail despite which drugs he was taking, there is no evidence that the change in formulary for plaintiff's HIV treatment made any difference in his lab results or clinical condition. Dkt. No. 38 (Ex. G, Affidavit of Khairul Emran), Dkt. No. 38 (Ex. K, Affidavit of Demetrice Smith), Dkt. No. 38 (Ex. H, Medical Records).

Plaintiff makes allegations in his various complaints that he often did not receive his medications and that his medications were given to other inmates but signed off in his personal chart. Dkt. Nos. 1, 7, 26. However, plaintiff's medical records show that plaintiff was consistently administered his medication, and he did not receive his medications only when he refused to take them. Dkt. No. 38 (Ex. G, Affidavit of Khairul Emran), Dkt. No. 38 (Ex. K, Affidavit of Demetrice Smith), Dkt. No. 38 (Ex. H, Medical Records).

According to medical personnel at the jail, at no time during plaintiff's stay at Richmond

City Jail was there any indication that plaintiff's medical condition or needs warranted transfer to VCU Hospital or to see any medical specialist at MCV. Dkt. No. 38. Moreover, nurses have no authority to send an inmate out for treatment at any other facility or outside treater, this is a decision made by the physician. Dkt. No. 38 (Ex. G, Affidavit of Khairul Emran), Dkt. No. 38 (Ex. K, Affidavit of Demetrice Smith). When plaintiff intentionally swallowed a large quantity of ibuprofen tablet, admittedly in order to be transferred to another hospital, Dr. Emran treated plaintiff at the jail with Maalox and activated charcoal, and plaintiff subsequently recovered. Dkt. No. 38 (Ex. G, Affidavit of Khairul Emran), Dkt. No. 38 (Ex. H, Medical Records). Additionally, Dr. Emran ordered close monitoring of plaintiff's vital signs and daily lab studies, placed plaintiff on one-on-one observation, and followed up with another physician visit 48 hours after the intentional overdose. Id.

Dr. Emran attests he has no control or authority regarding inmate housing. Dkt. No. 38. Dr. Emran may only make recommendations regarding modifications to housing for medical reasons. Dkt. No. 38 (Ex. G, Affidavit of Khairul Emran).

B. Captain Hunt

During most of plaintiff's incarceration at the Richmond City Jail, Captain Hunt was a shift lieutenant, and he worked the day shift at the jail from 7:00 am to 7:00 pm. Dkt. No. 35 (Ex. F, Affidavit of Captain Hunt). Captain Hunt was promoted to his current position in January 2015, when plaintiff was transferred to the Powhatan Correctional Center. Id. Captain Hunt first learned of plaintiff's incarceration at the Richmond City Jail when plaintiff intentionally consumed 30-35 ibuprofen tablets that were not prescribed to him. Id. Plaintiff admittedly consumed this massive quantity of ibuprofen because he wanted to be sent to the VCU Hospital. Dkt. No. 9. However, plaintiff was treated at the jail and was transferred to an isolation cell as a

4

result of his failed attempt to hurt himself. Dkt. No. 35 (Ex. F, Affidavit of Captain Hunt). Captain Hunt attests he never visited plaintiff at his isolation cell and had no control over which cell plaintiff was placed in. Id. Soon after plaintiff was transferred to the isolation cell, Captain Hunt left the jail for the day. Id. Captain Hunt specifically states that he never housed plaintiff in a cell that had feces or urine on the floor, no running water, a clogged toilet, cockroaches crawling on the floor, and he never forced plaintiff to sleep on the floor of any jail cell. Id.

C. The Inmate Grievance Procedure

The Richmond City Jail adopted and enforced a formal inmate grievance procedure that was in effect during Mr. Harvey's incarceration there. Dkt. No. 35 (Ex. A, First Affidavit of Captain D. Goodall; Ex. B, Grievance Procedures). If an inmate files an Inmate Grievance Form and is dissatisfied with the Richmond City Jail staff response to the grievance, he has two days to appeal this response by submitting a grievance appeal form. Id. Generally this is the last level of appeal and after receiving a response, the inmate is formally advised that he has exhausted all administrative remedies. Id.

Plaintiff submitted two Inmate Grievance forms on August 12, 2014 that related to alleged conduct by Mr. Emran that occurred months earlier, in February 2014 and April 2014. Dkt. No. 35 (Ex. C). These grievances do not state why plaintiff waited between four and six months to submit the forms to jail staff. Id. Plaintiff never appealed the denial of either of these grievances. Dkt. No. 35.

Plaintiff has submitted two additional Inmate Grievance Forms that he purportedly submitted to jail staff in April 2014 and May 2014. Dkt. No. 1. The Grievance Coordinator at the Richmond City Jail avers that the jail maintains records of all grievances submitted by inmates and neither of these grievances attached to plaintiff's Original Complaint exist in the jail's records.

5

Dkt. No. 35 (Ex. E, Second Affidavit of Captain D. Goodall). Having reviewed the grievances attached to the Original Complaint, Captain Goodall noted that those documents fail to bear any markings of authenticity that demonstrate they have ever been submitted to the jail. Id. Specifically, at the time of plaintiff's incarceration, inmate grievances were date-stamped, signed by the jail personnel when received, a log book number was written on the form, a notation cross-referencing the grievance was also made in the log book, and then a copy was returned to the inmate. Id. Plaintiff's purported grievances from April and May 2014 fail to bear any of these markings or notations; therefore, Captain Goodall concluded that these two grievances attached to plaintiff's Original Complaint were never actually submitted to the jail during plaintiff's incarceration. Id.

## II. Procedural History

Plaintiff filed this lawsuit on June 4, 2014 in this Court while he was still housed at Richmond Regional Jail. See Orig. Compl. (Dkt. No. 1). In an Order dated June 30, 2014, this Court directed plaintiff to amend his Complaint because it failed to state a claim and failed to demonstrate that plaintiff had exhausted his administrative remedies. Dkt. No. 3. On August 13, 2014 plaintiff filed a Verified Statement declaring that he had exhausted his administrative remedies; however, he failed to attach any record demonstrating that he had in fact exhausted his administrative remedies. Dkt. No. 5. Also on August 13, 2014, plaintiff filed his First Amended Complaint, which simply rephrased the allegations he made in his Original Complaint. Dkt. No. 7. In light of his failure to particularize and amend his complaint sufficiently, this Court again directed plaintiff "to provide specific facts that show some kind of personal involvement by each defendant in the actions which caused a violation of constitutional rights." Dkt. No. 8. On October 22, 2014, plaintiff filed his Second Amended Complaint and a Submission of Additional

Facts. Dkt. Nos. 9, 10.

### A. Plaintiff's Current Allegations

1. Dr. Emran failed to give plaintiff his blood pressure medication. Dkt. No. 9.

2. Dr. Emran and Nurse Smith failed to send plaintiff to VCU Hospital after he complained of headaches, chest pain, and arm and leg pain, and they again failed to send plaintiff to VCU Hospital after plaintiff "decided to take some pills" and intentionally consumed 30-35 Ibuprofen not prescribed to him. Dkt. No. 9. Plaintiff further alleges that Dr. Emran and Nurse Smith both prevented him from seeing another health care provider at MCV. Id.

3. Dr. Emran and Nurse Smith failed to administer plaintiff his previously prescribed HIV medication. Dkt. No. 9.

4. Dr. Emran failed to approve plaintiff's personal requests for certain HIV medications and gave plaintiff a "cheaper version of [his] HIV medication" that caused him to develop "dark circles" on his hands and a "rash on both of [his] sides." Dkt. No. 9.

5. Nurse Smith failed to reorder plaintiff's medications on multiple occasions. Dkt. No. 9.

6. Dr. Emran and Captain Hunt participated in the actions that led to plaintiff being placed in a "filthy" isolation cell that had feces and urine on the floor, a clogged toilet, cockroaches, no running water, and no mattress. Dkt. No. 9.

7. Dr. Emran is liable for failing to treat plaintiff's syphilis that was discovered after he was transferred to the Powhatan Correctional Center. Dkt. No. 26

### IV. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita, 475 U.S. at 587.

### III. Analysis

A. Plaintiff Failed to Exhaust His Administrative Remedies

Defendants' Motions for Summary Judgment must be granted on the ground that plaintiff failed to exhaust administrative remedies prior to bringing this federal action. The Prison

8

Litigation Reform Act ("PLRA") requires inmates to exhaust all available administrative remedies before filing suit under 42 U.S.C. § 1983. Specifically, the PLRA provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; see also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Booth v Churner, 531 US 956 (2001) (as long as a grievance tribunal has the authority to take some responsive action, the PLRA requires administrative exhaustion even if the grievance procedure does not allow monetary damages and prisoner seeks only monetary damages). To properly exhaust his administrative remedies, a prisoner must "complete the administrative review process in accordance with the applicable procedural rules" and deadlines. Woodford, 548 U.S. at 88-90. With respect to prisoner suits, proper exhaustion provides prisons the opportunity to correct their errors before being hauled into federal court and reduces the quantity of prisoner suits by either granting relief at the administrative level or persuading prisoners not to further pursue their claims in federal court, and exhaustion also improves the quality of prisoner suits filed in federal court by creating an administrative record for the district courts to reference. Id. at 90-93. The Supreme Court has held that where an inmate has filed grievances that are rejected as untimely, even where he filed all necessary appeals, he has failed to exhaust administrative remedies, and the case must be dismissed. Id.

Courts have no discretion to dispense of the exhaustion requirement in lawsuits where the PLRA applies, and a case must be dismissed where it is apparent that an inmate failed to properly exhaust available administrative remedies before filing suit. Id. at 89; see also Anderson v. XYZ Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005). The Supreme Court has noted that if a prisoner could properly exhaust his claims without complying with the procedural rules of the prison's grievance system, a prisoner could avoid the entire prisoner grievance process by simply filing a prison grievance he knows would be dismissed for procedural deficiency. Woodford, 548 U.S. at 96. To prevent this type of abuse, the Fourth Circuit has held that a prisoner must follow the required procedural steps in order to exhaust his administrative remedies, and return of an improperly filed grievance specifically does not serve to exhaust a prisoner's administrative remedies. Moore v. Bennette, 517 F.3d 717, 725, 729 (4th Cir. 2008); see also Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory.").

When a Virginia prisoner is confined in a local jail, before bringing an action in federal court he must receive a response to his properly-filed grievance and, if unsatisfactory, he must pursue it through all available levels of appeal before presenting that claim in federal court. Even if exhaustion seems futile because those remedies would not provide the relief the inmate seeks, the inmate must still exhaust all administrative remedies. Davis v. Stanford, 382 F.Supp.2d 814, 818 (E.D. Va. 2005), aff'd, 127 Fed App'x 680 (4th Cir. May 10, 2005). Generally, grievances are to be submitted within 30 calendar days of the date of incident. See VDOC Operating Procedure 866.1. Inmates may appeal any grievance decisions they are unsatisfied with, and there are several possible levels of review available for regular grievances. Id.

Plaintiff failed to exhaust his administrative remedies prior to filing his lawsuit in this Court, and this Court must dismiss his lawsuit with prejudice. Defendants have submitted evidence that plaintiff failed to submit any grievances regarding any alleged conduct by Captain Hunt specifically, and plaintiff thereafter failed to carry his burden to show a disputed issue of fact on this point. Due to this failure, plaintiff's claim against Captain Hunt must be dismissed as it is barred by the PLRA from litigation in this Court. The undisputed evidence in this case clearly demonstrates that plaintiff filed his grievances as to the remaining defendants long after the 30 day filing deadline had passed, further suggesting that he failed to properly exhaust his administrative remedies. Defendants also submitted evidence that plaintiff never filed any appeals of the two grievances he did submit, and plaintiff thereafter failed to carry his burden to show a disputed issue of fact on this point. As such, he failed to exhaust all administrative remedies available to him related to the matters alleged in his Complaint before he filed his lawsuit in this Court pursuant to § 1983. As plaintiff's failure to seek administrative resolution of his claims precludes his recovery from any defendant, plaintiff's claims against Captain Hunt, Dr. Emran, and Nurse Smith must be dismissed with prejudice.

B. <u>Defendants Did Not Violate Plaintiff's Eighth Amendment Rights</u>

Even if plaintiff had properly exhausted his administrative remedies, summary judgment in favor of defendants would be appropriate because the pleadings, affidavits, and exhibits on file demonstrate that no defendant violated plaintiff's Eighth Amendment Rights.

    I. <u>Defendants Were Not Deliberately Indifferent to Plaintiff's Serious Medical Needs</u>

It is undisputed that, despite plaintiff's allegations to the contrary, defendants did not violate plaintiff's Eighth Amendment rights. To prevail on a claim for deliberate indifference that rises to an Eighth Amendment violation, plaintiff must establish facts sufficient to show that jail

11

officials were deliberately indifferent to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). Thus, plaintiff must provide two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Hall v. Holsmith, 340 Fed. Appx. 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious medical need); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of medical malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege specific acts or omissions by the defendants that prove a deliberate indifference to basic standards of decency. See Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A prison official is not deliberately indifferent simply for failing to take all actions or precautions that he or she could have taken or even should have taken. Brown v. Harris, 240 F.3d 383, 390-91 (4th Cir. 2001). The prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Beorn, 848 F.2d at 851 (internal citations omitted). Medical malpractice does not give rise to a constitutional violation, nor does disagreement between the inmate and the prison about the proper way to treat a medical condition. See, e.g., Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Plaintiff's apparent disagreement with Dr. Emran or Nurse Smith over the course of his treatment does not establish a deliberate indifference claim. The undisputed evidence shows

that plaintiff's blood pressure, which was monitored on a frequent basis, remained completely stable and normal throughout his entire period of incarceration at the Richmond City Jail. Thus, it is clear that plaintiff did not require blood pressure medication since his levels remained stable without it, and the course of treatment prescribed by Dr. Emran and administered by Nurse Smith was reasonable and appropriate in regards to his blood pressure. Insofar as plaintiff disagreed with Dr. Emran and Nurse Smith about this course of blood pressure treatment, such a disagreement does not constitute evidence of a constitutional violation.

As further evidenced by his stable and undisputed HIV lab results, plaintiff's prescribed treatment and the administration of this treatment for his HIV was appropriate and reasonable. Again, any disagreement between plaintiff and the medical team at Richmond City Jail about his course of HIV treatment, specifically the medications prescribed and administered to him, does not constitute evidence of deliberate indifference to plaintiff's serious medical needs on behalf of Dr. Emran or Nurse Smith.

In addition, plaintiff never disputed that any condition or health concern arose necessitating his transfer to an acute care hospital or to any medical specialist. He has asserted absolutely no factual allegations that conflict with defendants' claims that plaintiff never needed to see any doctor outside of Richmond City Jail. Dr. Emran's response to plaintiff's intentional overdose of ibuprofen was clearly reasonable, and did not constitute deliberate indifference to plaintiff's need to go to an outside medical center. Dr. Emran responded to plaintiff's intentional overdose in a timely, reasonable, and appropriate manner, and he diligently acted to prevent serious harm to plaintiff. Plaintiff recovered from his overdose at the Regional City Jail without issue. Thus, Dr. Emran cannot be found to be deliberately indifferent because the undisputed facts support his reasonable response to plaintiff's self-imposed condition.

13

Plaintiff claims Dr. Emran and Nurse Smith failed to treat him for Syphilis while he was housed at Richmond City Jail; however, the undisputed evidence clearly shows that plaintiff was not diagnosed with Syphilis until he was transferred. Plaintiff does not contest that fact. Even if Dr. Emran was negligent in failing to diagnose plaintiff with Syphilis while he was at Richmond City Jail, this negligence does not rise to the level of a constitutional violation that entitles plaintiff to relief. Plaintiff also claimed that he suffered from headaches, chest pain, leg pain, arm pain, rashes, and a higher risk for contracting AIDS while at the Richmond City Jail; however, the medical records are replete with undisputed references to plaintiff's refusal to take his medications. Even giving plaintiff the benefit of the doubt that he did experience pain and somatic symptoms, such conditions do not rise to the level of serious medical needs that were intentionally ignored by defendants. The undisputed record before the Court is devoid of any proof that defendants failed to provide plaintiff with any reasonable care that they knew plaintiff needed. Thus, there is no material evidence that supports plaintiff's claim that either Dr. Emran or Nurse Smith acted deliberately indifferent to plaintiff's serious medical needs, and both defendants are entitled to summary judgment.

II. The Conditions of Plaintiff's Solitary Confinement Did Not Violate His Rights

Plaintiff fails to establish a cognizable constitutional violation against Captain Hunt and Dr. Emran in regards to the conditions of the solitary confinement cell he was placed in subsequent to intentionally overdosing on ibuprofen. To establish a claim for cruel and unusual punishment due to conditions of confinement, a plaintiff must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). To meet the first prong, a plaintiff must

allege facts sufficient to show that the condition complained of caused a "sufficiently serious" deprivation of a basic human need. Farmer, 511 U.S. at 834. Only extreme deprivations will make out an Eighth Amendment claim, and plaintiff has the burden of alleging facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in significant physical or emotional injury. See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). A plaintiff cannot have been subject to unconstitutional confinement conditions unless he can show a serious or significant physical or mental injury as a result of those conditions. Strickler, 989 F.2d at 1380-81 (finding that the inmate's legal complaint about overcrowding and poor ventilation did not constitute a constitutional violation because inmate did not allege that he suffered from any specific injury as a result of those purported conditions). To meet the second prong, a plaintiff must allege facts sufficient to show that the defendant knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that he drew that inference, and disregarded the risk posed. Farmer, 511 U.S. at 837.

In this case, plaintiff merely strings together a list of uncomfortable and purportedly unsanitary conditions without actually proving evidence of a serious physical or mental injury; thus, he fails to establish a claim for cruel and unusual punishment based upon the conditions of his solitary confinement cell. Plaintiff vaguely asserts that conditions in solitary confinement caused him "serious emotional injury" because the conditions in the cell "made [him] sick to [his] stomach." Dkt. No. 9. However, plaintiff simply fails to demonstrate any specific or serious injury caused by the conditions of his confinement. Additionally, defendants had little authority in matters involving inmate housing. The only "housing" decision Dr. Emran was involved in

15

was an order for plaintiff's personal safety after he took an overdose of ibuprofen. Captain Hunt was not responsible for the decision to put plaintiff in solitary confinement and he was only following orders by helping plaintiff into the cell. Neither defendant had any responsibility for choosing exactly which cell to place plaintiff in. Therefore, plaintiff's claims concerning the conditions of confinement do not rise to the level of a constitutional violation and summary judgment must be granted in favor of defendants Captain Hunt and Dr. Emran.

C. <u>Plaintiff Committed Fraud on the Court</u>

Defendants have also moved for the dismissal of the case based upon two seemingly fraudulent grievances presented to the Court as attachments to plaintiff's original complaint. If this case were not so clearly dismissible based upon plaintiff's failure to exhaust his administrative remedies and if defendants were not otherwise so clearly entitled to summary disposition on the merits of plaintiff's claims, then this Court would be obligated to further investigate defendants' claims that plaintiff deceived this Court by filing forged grievances. However, as it is well established on the record now before the Court that defendants are entitled to summary judgment, further delay in resolving this case to satisfy the procedural requirements of Rule 11 sanctions is not warranted at this time.

### IV. Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment must be granted. An appropriate Order shall issue.

Entered this 30th day of October 2015.

Alexandria, Virginia

/s/
Gerald Bruce Lee
United States District Judge